**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

GEORGETOWN UNIVERSITY HOSPITAL;
GEORGETOWN PEDIATRIC ASSOCIATES,
P.A.,
<u>Plaintiffs-Appellants,</u>

v.

RELIANCE STANDARD LIFE INSURANCE
COMPANY; SELF FUNDING
ADMINISTRATORS CORPORATION,

No. 97-1912

<u>Defendants-Appellees,</u>

and

LEVENACK CORPORATION EMPLOYEE
MEDICAL PLAN; WILLIAM E. BEIGHE;
STEVE GRANEK; JOHN WILSON; N.
CORPORATION; LEVENACK
CORPORATION,
<u>Defendants.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Deborah K. Chasanow, District Judge;
Catherine C. Blake, District Judge.
(CA-94-2339-CCB)

Argued: January 27, 1998

Decided: April 22, 1999

Before RUSSELL,* WIDENER, and WILKINS, Circuit Judges.

_____

*Judge Russell heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Ronald Scott Canter, WOLPOFF & ABRAMSON, L.L.P., Bethesda, Maryland, for Appellants. S. Kennon Scott, Annapolis, Maryland; Charles Henry Carpenter, PEPPER HAMILTON, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Ronald M. Abramson, WOLPOFF & ABRAMSON, L.L.P., Bethesda, Maryland, for Appellants. Deborah F. Cohen, PEPPER HAMILTON, L.L.P., Washington, D.C., for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiffs, Georgetown University Hospital and Georgetown Pediatric Associates, P.A. (collectively, Georgetown), as assignees of the rights of Brian Ward, brought suit against Reliance Standard Life Insurance Company (Reliance) and Self-Funding Administrators Corporation (Self-Funding), amongst others, for unpaid medical bills in excess of $330,000. The district court dismissed plaintiffs' claims against Reliance pursuant to Fed. R. Civ. Proc. 12(b)(6). Subsequently, the district court also granted Self-Funding's motion for summary judgment.

Between April and September 1993, Tyler Ward incurred substantial medical bills at Georgetown for treatment of a congenital heart condition. Until April 16, 1993, Brian Ward, Tyler's father, was insured through his employer, Levenack. Tyler, an infant, was a covered dependent under the Levenack Corporation Employee Medical Plan (Health Plan), a self-funded group health insurance plan gov-

2

erned by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. (ERISA). Reliance issued an excess loss indemnity policy to the Health Plan that provided for payment of catastrophic medical expenses incurred by members of the Health Plan.* Under the policy, Reliance was required to pay all claims exceeding $15,000 per covered person, up to a maximum limit of $985,000. However, an addendum to the policy set the deductible for Tyler Ward at $40,000, with a maximum limit of $960,000. The policy provided that the Health Plan would first pay any specific losses under its own plan and then request reimbursement from Reliance whereupon Reliance would pay that percentage of those losses which exceeded the deductible and which was satisfactorily proven.

As required by the policy issued by Reliance, Levenack entered into an Administrative Services Agreement (Services Agreement) with Self-Funding for claims administration. Under the Services Agreement, Levenack delegated the administrative responsibilities of the Health Plan to Self-Funding. Self-Funding received a monthly fee for its services.

On April 16, 1993, Levenack sold all of its assets to N. Corporation. Because its liabilities exceeded its assets, Levenack became insolvent and ceased to function at this time. However, Levenack's president attempted to arrange for the continuance of the Health Plan, and the $40,000 deductible for Tyler Ward's coverage was paid to Self-Funding. In addition, following notification by Self-Funding concerning eligibility under the Consolidated Omnibus Budget Reconciliation Act (COBRA) for continuation of benefits, Brian Ward accepted continued coverage on Tyler's behalf and made a series of premium payments to Self-Funding. Nevertheless, to date, Tyler's medical bills remain unpaid.

Georgetown argues several points on appeal. While we find the equities of the case greatly in favor of Georgetown given the evidence indicating that Levenack paid Tyler's $40,000 deductible to Self-Funding and that Reliance and Self-Funding continued to accept pre-

_____

*Reliance is actually the excess loss insurer of the Reliance Standard Group and Blanket Insurance Trust, and the Health Plan is a participating unit in the Trust.

3

miums from Levenack and Brian Ward only to refuse payment on what amounts to no more than a technicality, we are bound by precedent to agree with the district court that Georgetown's claims against Self-Funding are preempted by ERISA and, further, that Georgetown's claims against Reliance are invalid given that, under the facts of this case, it fails to qualify for third party beneficiary status.

In American Medical Security Inc. v. Bartlett , 111 F.3d 358, 360 (4th Cir. 1997), we held a Maryland insurance regulation fixing minimum attachment points applicable to self-funded plans' stop-loss insurance policies to be preempted by § 514(a) of ERISA, 29 U.S.C. § 1144(a). In doing so, we noted that

> [u]nder a self-funded plan, the employer who promises the benefit incurs the liability defined by the plan's terms. That liability remains the employer's even if it has purchased stop-loss insurance and even if the stop-loss insurer becomes insolvent. Conversely, if the employer becomes insolvent, the solvency of the stop-loss insurer may not benefit plan participants and beneficiaries. This is because their claims against the insurer would be derivative of the plan's claim against the insurer, which arises only after the plan actually makes benefit payments beyond the attachment point. In contrast, when a plan buys health insurance for participants and beneficiaries, the plan participants and beneficiaries have a legal claim directly against the insurance company, thereby securing benefits even in the event of the plan's insolvency. Participants and beneficiaries in self-funded plans may not have the security of the insurance company's assets because stop-loss insurance insures the plan and not the participants.

American Medical Security, 111 F.3d at 364.

Accordingly, we affirm the judgment of the district court for the reasons substantially expressed in its opinions.

AFFIRMED

4